**Brenda C. HURST, Plaintiff-Appellant,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 83–5923.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1984.

Decided Jan. 28, 1985.

Philip P. Durand (argued), Ambrose, Wilson & Grimm, Knoxville, Tenn., for plaintiff-appellant.

John W. Gill, U.S. Atty., Jimmie Baxter, Marilyn Hudson (argued), Asst. U.S. Attys., Knoxville, Tenn., for defendant-appellee.

Before EDWARDS * and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Appellant, Brenda Hurst, appeals from the Secretary of Health and Human Services (the Secretary's) denial of her application for disability insurance benefits under the Social Security Act, as amended, (the Act). We reverse the district court and remand for award of benefits.

In January, 1979, Hurst filed an application for disability benefits in which she alleged that she had been disabled by rheumatoid arthritis since July 21, 1976. An administrative law judge (ALJ) found that medical evidence established that Hurst was impaired by joint pain of undetermined etiology, that her testimony of severe pain could be discounted as unsupported by objective medical findings, and that she was not disabled within the meaning of the Act. The Appeals Council sustained the ALJ. Hurst filed a complaint in district court and sought a remand to the Secretary for consideration of new evidence in the form of a letter from Dr. Donna Winn, dated August 11, 1980. The district court denied Hurst's motion to remand and granted the Secretary's motion for summary judgment. On appeal, this Court determined that Hurst

---

* The Honorable George Edwards took senior status January 15, 1985.

had established good cause to remand and reversed the district court. 663 F.2d 1071.

On remand, an ALJ considered the new evidence and attempted to affirm the previous ALJ's decision. The Appeals Council remanded the case once again, and required the ALJ to make new findings of fact and conclusions because the first ALJ's decision had been vacated. In January, 1983, the ALJ concluded that Hurst suffered brief, episodic symptoms of rheumatoid arthritis, possibly diffuse fibrositis, and periods of pain which were not continuous and intractable. He found that her impairments were slight and not disabling. The Appeals Council and district court affirmed and this appeal follows.

Appellate review of the Secretary's decision to deny disability benefits is limited to determining whether substantial evidence in the record taken as a whole supports the Secretary's findings. 42 U.S.C. § 405(g) (1976). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In determining whether the evidence is substantial, the court must " 'take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of H.E.W.*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

A claimant bears the burden of establishing a prima facie case that she suffers a disability as defined by the Act: the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). A " 'physical or mental impairment' ... results from anatomical, physiological or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). In the present case, Hurst must establish that she was disabled during the period between November 3, 1977—when her non-disability was determined on a previous application—and December 31, 1981—when she last met the Act's earnings requirement.

Hurst is currently thirty-six years old and has a high school education. From 1967 through July, 1976, she was employed as a seamstress, a job which required manual dexterity, and lifting and carrying bundles of upholstry material. Her former employer testified that Hurst had been a dependable employee who was good at her job and who did not attempt to avoid work before her disability began. He also testified that in July, 1976, she initially left her job on sick leave and only later recognized that she would not be able to return. Hurst testified that severe joint pain prevented her from returning to work, that her legs and hands swell unless she takes gold shots, and that she is unable to grip. Her husband and aunt corroborated this testimony.

Dr. Donna M. Winn, a board-certified specialist in internal medicine and a board eligible rheumatologist, began treating Hurst on December 31, 1979. As a result of her examination, Dr. Winn concluded that Hurst suffered from seronegative rheumatoid arthritis. The doctor noted that Hurst was being treated with gold and with prednisone, another drug which removes swelling and warmth from joints. In her March 25, 1980 letter Dr. Winn sets out the criteria upon which her diagnosis, that Hurst suffered disabling rheumatoid arthritis, was based. The guidelines originated in the Primer on Rheumatic Disease, published by The Arthritis Foundation. Dr. Winn characterized these criteria as acceptable "throughout the world." The Secretary has not challenged the reliability of the criteria relied upon by Dr. Winn; therefore, it is uncontested that those guidelines represent "medically acceptable

clinical" techniques for demonstrating a disability.

Morning stiffness of at least two hours and pain on motion or tenderness in the joints are Dr. Winn's first two criteria. Hurst's own testimony at the hearings concerning her claim, and the corroborating testimony of her husband and aunt, support Dr. Winn's conclusions regarding the presence of both stiffness and pain. The Secretary does not address, and credit or discredit, Dr. Winn's conclusion or Hurst's testimony. The Secretary simply reports that stiffness and pain are criteria and then discusses other criteria, as though stiffness and pain are patently irrelevant.

■ First, failure to consider the record as a whole undermines the Secretary's conclusion. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980) (citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir.1973)). Secondly, pain alone may establish a disability for the purposes of the Act. *Kirk v. Secretary of Health and Human Services*, 667. F.2d 524, 538 (6th Cir.1981) (citing *Glass v. Secretary of Health, Education & Welfare*, 517 F.2d 224 (6th Cir.1975)). Finally, lay testimony joined with medical evidence may establish disabling pain. *Allen v. Califano*, 613 F.2d at 145, (citing *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383 (6th Cir.1978); *Noe v. Weinberger*, 512 F.2d 588 (6th Cir. 1975)). In the present case, Dr. Winn linked Hurst's own reports of pain with medical evidence in order to reach her professional conclusion. This was entirely proper. While the ALJ's credibility determinations deserve great respect, no credibility determination has been made with regard to this evidence. As the Seventh Circuit has noted:

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

Dr. Winn's next criterion was the presence of various swollen joints. The doctor notes that while she did not personally view swelling, one would not expect to view swelling when, as here, the patient was being treated for that very condition with prednisone and gold, which Dr. Winn claims are the two most powerful drugs used to prevent and reduce swelling and heat at the joints. Dr. Winn relies upon the records of Dr. Kirkpatrick, who stated that Hurst suffered rheumatoid arthritis and that he prescribed the drugs in order to reduce associated pain and swelling.

The Secretary does not contest that Hurst was receiving prednisone and gold treatments, and does not contest that these drugs successfully remove swelling and heat. The Secretary's assertion that the drugs were prescribed as treatment for a condition other than rheumatoid arthritis is not credible in light of the statement by Dr. Kirkpatrick, the prescribing doctor, that he prescribed the drugs as treatment for Hurst's rheumatoid arthritis. Nor can the Secretary's finding that the record contains no evidence of swelling be based upon substantial evidence. Hurst's personal doctor, William N. Smith, reported in May, 1979, that "this patient's condition is worse since 2–2–79 . . . . Feet and hands are swelling." The Secretary reveals no reason why Dr. Winn is unreasonable to rely upon other doctors' treatments to establish that Hurst's joints were swelling except when she was being treated with gold and prednisone.

Dr. Winn links the preceeding criteria with her own observations of "x-ray changes typical of rheumatoid arthritis, consisting of juxta-articular osteoporosis, loss of the joint space at the metatarsal joints bilaterally, and loss of the joint space at the radial-carpal joints." The Secretary discredits these findings as vague; the Secretary also emphasizes that the x-rays, examined in July, 1979, by Dr. Bolstad at the Secretary's request, did not reveal narrowing of joint space or osteopenia. It is well

established, however, that the reports of treating physicians such as Dr. Winn are to be given greater weight than the reports of physicians such as Dr. Bolstad who are employed and paid by the government to defend disability claims. *Allen v. Califano*, 613 F.2d at 145, (citing *Whitson v. Finch*, 437 F.2d 728, 732 (6th Cir.1971)).

Finally, Dr. Winn noted that the reliability of the criteria supporting a finding of rheumatoid arthritis was strengthened by the absence in Hurst's case of the exclusions listed at the end of the formal criteria. The Secretary did not address this medical finding.

On August 11, 1980, Dr. Winn reported that she had hospitalized Hurst for "intense physical therapy" to address the patient's persistent pain. According to the doctor, the hospitalization "was fruitful" for the patient's pain. It also revealed a positive ANA profile and objective indications of Sjogren's symptoms, which are associated with rheumatoid arthritis. The doctor also noted that an ANA profile from the University of Missouri was negative, so the Secretary allowably discounted the ANA evidence. Once again, as with other evidence in the record, the Secretary dismisses the reported Sjogren's symptoms as not themselves establishing that Hurst suffered disabling rheumatoid arthritis. A proper analysis would acknowledge that the report represents objective medical findings which correlate with and corroborate other findings. Dr. Winn's August, 1980 report concluded that Hurst remained incapacitated by fibrosis and rheumatoid arthritis, and held out hope of improvement.

Dr. Winn's final report originated in February, 1982, over a month after Hurst no longer satisfied the Act's special earning requirements. The Secretary acknowledges that "statements from her [Hurst's] treating specialist have to be given, and should be given great weight," and then credits only the portion of Dr. Winn's report which stated that Hurst "has no objective findings at this time and hasn't had any for the past few months." These con-

clusions were made in 1982, after the period during which Hurst must prove that she was disabled for at least twelve months. Both Dr. Winn and Dr. Kirkpatrick acknowledged in their earlier reports that remission was possible.

Dr. Winn's February, 1982 report specifically contrasts the lack of "objective findings at this time," with previous years "during which I do feel that she was disabled." Dr. Winn's report reviews the objective findings which support her conclusion that during 1980 and 1981 Hurst was unable "to engage in any substantial gainful activity because of Rheumatoid Arthritis and Fibrosis."

■ The Secretary's dismissal of the doctor's medical judgment regarding 1980 and 1981, on the basis that it contradicted her conclusion in 1982, is not credible. From the start, Hurst's doctors had held out the possibility of remission. Substantial evidence supports the conclusion that Hurst suffered rheumatoid arthritis from July, 1976 through late 1981, that from November, 1977 through August 11, 1981, she was disabled due to her arthritic condition, and that subsequently remission occurred. The Secretary has not challenged Dr. Winn's use of medically accepted clinical techniques and has responded to the doctor's forthright reports of her conclusions by crediting only those portions of which the Secretary approves. The Secretary's denial of disability benefits in the present case are not supported by substantial evidence.

Before concluding we note, as we did during oral argument, that the Secretary relies in part upon the report of Dr. Stephen Thurman, of Thurman & Thurman, who examined Hurst at the Secretary's request. Dr. Thurman pronounced Hurst capable of performing light work. This Court has twice noted that doctors Thurman & Thurman have submitted fraudulent reports to the Secretary. *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir.1984); *Wood v. Secretary of Health & Human Services*, 667 F.2d 1029 (6th Cir.1981). Fraudulent reports cannot constitute sub-

stantial evidence in support of the Secretary's determination. While we cannot on the facts before us find that Dr. Thurman's report in the present case was fraudulent, we remonstrate the Secretary that reliance, even in part, on questionable medical reports is highly objectionable and will not enable this Court to affirm the Secretary's determinations.

For the foregoing reasons we REVERSE the district court and REMAND for an award of benefits from November 4, 1977—the date upon which our review begins, following the unappealed denial of benefits by the Appeals Council on an earlier application—to August 11, 1981.