811 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry HAYES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-3914.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1986.
 
 Before KEITH, MARTIN and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant, Henry Hayes, appeals from the denial of his claim that he is disabled within the meaning of the Social Security Act. His claim for benefits grows out of a serious skin condition he suffered as a consequence of his working as a spotwelder at a Chrysler plant. The skin rash grew progressively worse and irritated his hands, feet, and other parts of his body, causing him to quit work based upon his doctor's advice. He was hospitalized twice in the course of treatment for his condition.
 
 
 2
 The Administrative Law Judge (ALJ) and the Appeals Council denied both the claim and Hayes' request for reconsideration. The district court has affirmed this denial, bringing about this appeal.
 
 
 3
 Appellant was born on September 5, 1948, and is a high school graduate who has worked as a clothing salesman, as a quality control inspector, and finally as a spot welder from 1972 to January, 1983. There is no serious dispute about appellant's medical condition involving extreme itching and irritation on the hands, feet, and extremities, which results in open sores that limit his ability to stand and walk and prevents his continued work as a spot welder. He is able, however, to sit without difficulty. Hayes first experienced this condition in 1980, and he first sought treatment in February of 1981. Various doctors treated him over the next two years. During this time, appellant worked from nine to ten months, but his condition got worse every time he went back to the Chrysler plant. At one point, he experienced a rash over his entire body. He has been found to be allergic to Thiuram and to "Caine" drugs, but his condition improves by carefully avoiding products containing these substances, by taking the prescribed medication, and by being away from the place of his former employment. Due to his careful avoidance of exposure to the conditions causing his rash, Hayes had only one severe outbreak during the year prior to his hearing before the ALJ.
 
 
 4
 Appellant was instructed to purchase hypo-allergenic shoes, did so, but suffered an allergic reaction to them. He claims he must walk with a cane because of the severity of the condition and because he can wear shoes for only a short time. He also has diabetes and porphyria cutanea tarda, which complicate further both his condition and its treatment.
 
 
 5
 Appellant's daily routine, according to his testimony, is to go out in the morning to the post office, and to check on his parents. He also tries to go out in the evening for an hour or so; he eats out and occasionally goes to a movie. He takes care of his apartment and goes grocery shopping. At the time of the hearing before the ALJ, appellant was receiving $880 per month sick pay. He has not looked for any other type of work since leaving Chrysler; he stated that he had no plans to look for any type of work.
 
 
 6
 The medical evidence indicates that appellant was first treated for his condition in April, 1981. Prior to the outbreak of the rash, he had been in direct contact for over one month with a "chemical based oil" used to clean steel. His family doctor referred him to a dermatologist, who hospitalized him for about two weeks for treatment and testing. While in the hospital, appellant was diagnosed as having eczematous dermatitis with a secondary diagnosis of diabetes mellitus. Except for his blood sugar level, all laboratory tests were within normal limits. Appellant was placed on insulin, and has responded very well with regard to his diabetes. The dermatitis treatment caused gradual improvement, and appellant was released much improved.
 
 
 7
 Upon his return to work, appellant's rash worsened and he left work again after only four days. His dermatologist, Dr. Yoho, referred him to the Cleveland Clinic where he was hospitalized for two more weeks, under the care of Dr. Taylor. Patch tests revealed that appellant's rash results from an allergy to Thiuram, a component of certain rubber and chemical compounds. Appellant also showed an allergy to drugs such as Lidocaine, Zylocaine, and Nupercaine, local anesthetic agents. Treatment again resulted in gradual improvement, particularly on the palms of appellant's hands and the soles of his feet. A physical therapy assessment during this period indicated that appellant's functioning was largely within normal limits. During an outpatient post-release examination, Dr. Taylor noted that appellant's hands had improved, but his feet showed signs of further problems, so appellant was instructed to use hypoallergenic shoes.
 
 
 8
 Dr. Marsico, appellant's treating physician, a dermatologist, began treating Hayes in December of 1982. Dr. Marsico confirmed the diagnosis of eczematous dermatitis caused by an allergy to Thiuram. He described appellant's condition as weeping, secondarily infected, fissured, eczematous dermatitis over most of his body, particularly his hands and feet. Appellant showed improvement from Dr. Marsico's treatment and from being away from work. In 1983, Dr. Marsico started prescribing oral steroids. Over the next three weeks, he decreased the dosage in order to reduce a risk of adverse effect upon Hayes' diabetes. Dr. Marsico also began giving topical injections of steroids to attempt to solve what he described as a "severe, uncontrollable problem."
 
 
 9
 Dr. Marsico expressed his opinion that appellant, then thirty-five years old, was permanently disabled. In a 1984 report, Dr. Marsico further diagnosed appellant as having porphyria cutanea tarda, which is a chronic liver disease with skin manifestations of blisters on the arms, hands, and face. According to Dr. Marsico, this disease would prevent appellant from doing any job where he would be exposed to sunlight. In Dr. Marsico's opinion, it would be "difficult" (but not impossible) for appellant to perform minor sedentary jobs, due to the "ubiquitous" nature of Thiuram.
 
 
 10
 James Fleming, M.D., a board-certified internist, testified at the hearing before the ALJ as a medical advisor. He reviewed the course of appellant's treatment and appellant's medical records, including the medications that he was using at the time of the hearing; he identified the list of materials and products containing Thiuram, and he described appellant's treatment as "standard." Dr. Fleming examined appellant's hands and feet during the hearing, and noted that the palms of appellant's hands were clear, though the back of both hands showed marked scaling with minimal fissuring extending up the outer third of his forearm. He found no evidence of superimposed infection. He noted lesions on the soles of appellant's feet, and thickening of the normal skin, but no fissuring.
 
 
 11
 Dr. Fleming concluded that appellant's impairments did not meet or equal any of the listings in the regulations, and he stated that, with regard to his functional limitations:
 
 
 12
 I think he would be limited to sedentary levels of activity as defined in the regulation. And very importantly and very significantly, the environment of said activity must be clean and free of the known allergic materials, that is in terms of his need to come into direct contact with it. These allergic eczematous dermatosis only occur when you contact the substance, that is touch it, and feel it, handle it. Not by just being in their environment. I would say very definitely a very, very clean environment. This may necessitate treating objects and things that claimant would have to handle.
 
 
 13
 On cross-examination by appellant's attorney, Dr. Fleming clarified his opinion:
 
 
 14
 Q. So in other words, for this man to work he's going to have to find a place that is willing to clean up the environment completely, and he's going to have to be extremely carefully [sic], is that correct?
 
 
 15
 A. That's not--if you understand, I'm emphasizing direct contact and handling and using of these. I do not see this particular compound as being that universal. And casual contact would not result in medical complications.
 
 
 16
 Dr. Fleming conceded that substances unseen by appellant could cause occasional flare-ups.
 
 
 17
 Doctors Robinson and Gardner also made residual functional capacity assessments. Dr. Robinson's report indicates that appellant could sit for six hours per day, could lift up to ten pounds (maximum), could stand for only two to three hours per day, could not use foot controls, and that he could occasionally use hand controls. Dr. Gardner's report specifically concluded, however, that appellant's "impairment [is] not severe based on findings noted above." Dr. Gardner concluded that appellant could lift and carry 100 pounds, could occasionally lift 50 pounds, could sit for 6 hours per day, could stand or walk only 2-3 hours per day, "should not use foot controls", and "should avoid exposure to chemicals and solvents and should work in a clean, dry environment."
 
 
 18
 By agreement of the parties, interrogatories were submitted to a vocational expert, Mamie Elizabeth Hankerson. The expert served as counselling supervisor for the Ohio Bureau of Employment Services, and she indicated that there were a significant number of jobs that appellant could perform even with his limitations. The listed jobs included cashier, ticket seller, and working with a telephone answering service. Appellant submitted evidence from a vocational expert whose testimony directly contradicted Ms. Hankerson.
 
 
 19
 Appellant contests two of the ALJ's "findings": (1) "The claimant has severe ezecamtous [sic] dermatitis, but he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. [,]" and (2) that "Based on an exertional capacity for sedentary [work], and the claimant's age, education, and work experience, section 404.1569 and Rule 201.27, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of not disabled." Appellant relies heavily on his treating physician's opinion that he is disabled, which opinion, he argues, is entitled to greater weight than the opinions of the physicians engaged by the Secretary. See Hurst v. Secretary, 753 F.2d 517 (6th Cir.1985).
 
 
 20
 To succeed on this appeal appellant must demonstrate that either of the two determinative findings noted above are not supported by substantial evidence. 42 U.S.C. Sec. 405(g); Gibson v. Secretary of Health, Education, & Welfare, 678 F.2d 653 (6th Cir.1982).
 
 
 21
 The ALJ found that appellant's impairments are neither listed in nor medically equal to those listed in the pertinent regulations. There is substantial evidence supporting this finding: (1) appellant's skin problem cleared up, to a considerable extent, once he quit working at the Chrysler plant and was treated; (2) the listing in category 8.02 requires "extensive lesions not responding to prescribed treatment," 20 C.F.R. Part 404, Subpart P, App. 1, Category 8.02 (emphasis added); (3) a physical therapy assessment indicated that appellant functioned within normal or near normal limits; (4) Dr. Taylor noted improvement, after treatment, especially on appellant's hands; (5) Dr. Fleming opined that appellant was not disabled within the regulations' definitions; (6) Dr. Gardner concluded that appellant's condition was not disabling within the meaning of the Act; and (7) appellant admitted that his condition had cleared up, and that he had experienced only one bad flare-up during the year before his hearings. (This despite going frequently to the post office, to his parents home, to public restaurants, and to grocery stores.)
 
 
 22
 We consider next the sequential analysis of disability provided in the regulations, as discussed from time to time by this court. In Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984) (citations omitted), we described the questions involved in such an analysis:
 
 
 23
 1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2....
 
 
 24
 2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled....
 
 
 25
 3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled....
 
 
 26
 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled....
 
 
 27
 5. Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6....
 
 
 28
 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to Step 7....
 
 
 29
 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. If no, the claimant is disabled....
 
 
 30
 See also Odle v. Secretary, 788 F.2d 1158, 1160 (6th Cir.1985) (per curiam); Salmi v. Secretary, 774 F.2d 685, 687-88 (6th Cir.1985). After a negative response here to the first question, it is evident that questions two through four should be answered affirmatively. The negative answer to the fifth question is detailed above; appellant's impairments do not meet or equal those listed in the regulations. We proceed to question six, and, again, the answer is no; appellant cannot perform his past relevant work. The final question, then, is the focus of appellant's attack on the ALJ's second determinative finding: whether, based upon appellant's exertional capacity and in light of his age, education, and work experience, he can perform other work.
 
 
 31
 Appellant attacks the ALJ's finding that he is qualified to and can perform other substantial gainful work in the national economy. He points out that he must work in an environment free of allergens. It appears that each of the jobs cited by the vocational expert as within appellant's limitations may well involve exposure to appellant's allergens. Appellant is essentially unskilled with no transferable skills, yet the jobs described by the vocational expert may be semi-skilled positions for which Mr. Hayes is not qualified. Dr. Phillips, the medical expert offered by the Secretary, found that Hayes' residual capacities are such that few, if any, jobs exist that relate to his past work history, or to his educational level, in light of his severe limitations.
 
 
 32
 The treating physician and the medical advisor in this case testified that appellant would have to have an unusually clean environment in which to work, one free of Thiuram-containing substances. We are not entirely satisfied that it is within Dr. Marsico's expertise to state the extent to which Thiuram-containing substances would be present in various job situations in order to conclude that Hayes was totally disabled. There may or may not be a significant number of jobs in the national economy that appellant could perform in spite of his limitations, but we cannot make an adequate determination on this record.
 
 
 33
 Because we are not satisfied that there was sufficient information upon which to evaluate whether appellant can perform other jobs in the national economy, we REMAND the case for additional evaluation and findings relative to appellant's ability to perform gainful work in the national economy in light of his need to work in an unusually clean environment.