875 F.2d 864
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary A. GUTIERREZ, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 88-1645.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1989.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The claimant, Mary Gutierrez, filed an application for disability insurance benefits in November 1985, alleging a period of disability commencing November 1982.[1] Claimant stated she is disabled due to a stroke, heart disease, and hypertension. The Secretary denied benefits, reasoning that claimant did not have a severe impairment, and that the combined effect of all impairments caused no functional limitations. Subsequent to a hearing, the administrative law judge (ALJ) also denied benefits, and the Appeals Council denied claimant's request for review of the decision. Claimant then appealed to the district court.
 
 
 2
 The district court referred this case to a magistrate for findings and recommendations. The magistrate concluded that claimant was entitled to benefits; however, the magistrate's report and recommendation was later rejected by the district court, and claimant was denied benefits. Claimant appeals the district court's grant of the Secretary's summary judgment motion. For the following reasons, we affirm the district court's judgment that the Secretary's decision was supported by substantial evidence.
 
 I.
 
 3
 Claimant alleges that she is permanently disabled and unable to work due to impairments including heart disease, hypertension, and residuals from a stroke. Claimant was born on October 31, 1926, and has a twelfth grade education. She previously worked for approximately thirty-five years as a laborer in a bindery. Claimant asserts that since she had a stroke in November, 1982, she has been unable to do her work at the bindery due to fatigue, loss of dexterity in her right hand, and forgetfulness. The medical evidence in the record consists of reports from hospitals and several treating or consulting physicians.
 
 
 4
 Records from the Dearborn Medical Centre Hospital indicate that claimant was admitted there on November 24, 1982, with complaints of slurred speech, and right arm and leg weakness and numbness. Claimant's blood pressure was 200/120. She was diagnosed as having had a cerebrovascular accident (stroke), and she improved over the next three days to the point where she could walk without assistance. Claimant was transferred to Wyandotte General Hospital on December 11, 1982, for rehabilitation. Upon discharge from Wyandotte General on December 30, claimant was independent in feeding, dressing, bathing, and walking, although she needed to use a cane. She required moderate assistance with homemaking activities, and her speech was good but dysarthric. (App. 150).
 
 
 5
 Dr. Sheila Sheehan, a consulting physician, examined claimant on March 16, 1983. Dr. Sheehan noted that claimant used a cane, but did not appear to need it. Claimant's speech was excellent, her face symmetric. Claimant's ability to talk and understand speech was very good and claimant could undress and dress herself. The power in all extremities was noted as excellent. Dr. Sheehan concluded that claimant's problem appeared to have resolved itself. (App. 175-76).
 
 
 6
 Dr. Lipkin, a treating physician, submitted two reports. The first report, dated September 5, 1983, indicates that Dr. Lipkin saw claimant that day. Claimant walked with a limp, had some dragging of her right foot, had numbness in the her hands, no coordination in her right hand, and was unable to sit or stand for any length of time. Claimant wrote slowly, was unable to tie her shoes, but could drink from a cup and pick up coins. Claimant was able to squat but unable to hop on one foot. The report also indicated that claimant had been experiencing chest pains once a week for the past six months. Dr. Lipkin's second report is dated July 5, 1985, but Dr. Lipkin's notes indicate that claimant was last seen on September 5, 1983. This report indicates diagnoses of gouty arthritis of the right knee, moderate hypertension with no associated organ damage, and a stroke. Dr. Lipkin indicates that claimant has a normal gait but cannot walk on heels and toes, nor can she squat.
 
 
 7
 Dr. Tanhehco, also a treating physician, submitted several reports. Dr. Tanhehco has treated claimant since her stroke, and in a report dated March 1, 1983, he indicates that claimant has weakness of her right arm and leg with a hesitant gait and some dragging of her right foot, but that claimant can walk without assistance. In a September 15, 1983, report, Dr. Tanhehco noted essentially the same findings but also reported that claimant could write, tie her shoes, drink from a cup, and pick up coins. On July 5, 1985, Dr. Tanhehco reported that claimant had persistent symptoms of weakness on her right side and dragging of her right foot. Claimant's recent blood pressure readings ranged from 150/94 to 160/104. In December 1985, Dr. Tanhehco noted that claimant's right grip strength was 70% of normal, with no loss of fine dexterity. In a report from March 1986, the same symptoms were noted, plus claimant had difficulty picking up coins and seemed to easily forget things.
 
 
 8
 Dr. Iqbal, a physiatrist, performed a consultive exam in August 1985. (App. 219). Dr. Iqbal noted normal muscle strength in upper and lower extremities, and no sensory deficits. The examiner also reported that claimant was dexterous and could write legibly, pick up coins, tie laces, and turn a doorknob. Claimant could also walk normally without assistive devices. In conclusion, Dr. Iqbal stated that he did not find any residual signs of paralysis.
 
 
 9
 Dr. Forrer performed a consultive psychiatric examination in March 1986. Claimant described her daily activities as doing dishes, making the bed, sweeping, mowing the law, shopping, and handling family finances. Dr. Forrer noted no gait disturbance, despite claimant's statement that she had a gait disturbance. Claimant drove herself to the appointment. Dr. Forrer concluded that claimant's "complaints are subjective in nature" and that there was no indication of any daily activities' impairment, nor did he have a psychiatric diagnosis.
 
 
 10
 At the hearing before the ALJ, claimant testified that she did return to her bindery work in May 1983 and worked until June 1984. Claimant stated that she needed a great deal of assistance with her job duties from other employees, and had difficulty with fatigue and right-sided weakness. Claimant's former supervisor at the bindery submitted a letter which substantiated claimant's testimony. The supervisor explained that claimant was permitted to return to work because she was a long-term employee, but that claimant was unable to do her job. Claimant's production was very low, and she was excessively absent, working only an average of less than nine days per month. In August 1985, the Secretary determined that claimant's return to work did not represent substantial gainful activity because she was given special considerations.
 
 
 11
 Dr. Harrison, a vocational expert, testified at the hearing that claimant's past job was as a bindery helper, performing those tasks necessary after the books were bound. The work as described was unskilled and light, but occasionally medium. Dr. Harrison further stated that whether an individual could engage in this work activity would depend on the degree of right-sided weakness, lack of dexterity, memory problems, or heart condition symptomatology.
 
 
 12
 The ALJ determined that claimant's work in the bindery consisted solely of light-level work. In the course of these proceedings, claimant had described her work activities several times, both in vocational reports and in testimony at hearings. The ALJ decided that claimant's testimony concerning the amount of weights lifted that would classify claimant's past work as medium level was not credible. The ALJ determined that the bindery work required dexterity, which claimant did retain, but did not require full grip strength on the right.
 
 
 13
 The ALJ concluded that claimant has severe residuals from a stroke, but does not have an impairment or combination of impairments which equal the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further concluded that claimant can perform work-related functions which do not require full grip strength of her right hand or prolonged standing or walking, and since claimant's past work did not require these limitations, claimant could do her past work. Therefore, a decision of "not disabled" was reached.
 
 
 14
 Upon review, the magistrate determined that there was not substantial evidence to support the ALJ's conclusion that claimant could do her past work. The district judge, in rejecting the magistrate's report, stated that there was substantial evidence supporting the ALJ's decision, and that the magistrate had erred in disagreeing with the ALJ's finding on the credibility of claimant.
 
 II.
 
 15
 Claimant's sole issue on appeal is that the district court erred in finding that there was substantial evidence to support the ALJ's decision that claimant could perform her past work.
 
 
 16
 The findings of the Secretary are conclusive if they are supported by substantial evidence and, therefore, judicial review is limited to determining whether there is substantial evidence in the record to support the findings. 42 U.S.C. Sec. 405(g); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938). The fact that the record, taken as a whole, might support a different conclusion is immaterial. Crisp v. Secretary of Health & Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986).
 
 
 17
 The Secretary follows sequential steps in evaluating disability claims. 20 C.F.R. Sec. 1520. The first step mandates a finding of "not disabled" if an individual is engaging in substantial gainful activity. Here, claimant was not working, so the process proceeded to step two. This step states that an individual who does not have a severe impairment will not be found "disabled." Here, the ALJ determined that claimant did have a severe impairment. Step three indicates a finding of "disabled" if the impairment meets a listed impairment, which claimant's impairment did not. Step four directs a finding of "not disabled" if an individual is capable of performing work he or she has done in the past. This is the step at which the ALJ made a determination that claimant is not disabled.
 
 
 18
 The burden is on the claimant to establish a prima facie case of disability by proving that she is unable to perform her past work. Mitchell v. Bowen, 827 F.2d 387, 389 (8th Cir.1987); Hurst v. Secretary of Health & Human Services, 753 F.2d 517, 518 (6th Cir.1985). The medical evidence of record indicates that claimant has some non-specified right-sided weakness with a slight to moderate loss of grip strength in the right hand. There is no medical evidence of a loss of dexterity. To determine whether claimant could do her past work, the ALJ was obligated to ascertain the demands of the former work, and compare these to claimant's present abilities. 20 C.F.R. Sec. 404.1520(e); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986); Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984). The ALJ did determine the demands of claimant's past work by the use of testimony from claimant and a vocational expert. The ALJ concluded that claimant's limitations would not impede her ability to do her past work and, upon review, we find that there is substantial evidence for that conclusion.
 
 
 19
 Claimant argues that the statement from her supervisor, which states that claimant was unable to perform her usual bindery work, establishes that she cannot perform her past work. We disagree. The supervisor's statement has evidentiary value and can certainly be considered by the ALJ.[2] However, it is within the province of the ALJ to determine the amount of weight to accord this type of statement, just as the ALJ does with all other evidence. A claimant has "the burden of proving an inability to return to his former type of work, and not just to his former job." Villa v. Heckler, 797 F.2d at 798 (emphasis in original); see also Gray v. Heckler, 760 F.2d 369, 372 (1st Cir.1985); Studaway v. Secretary of Health & Human Services, 815 F.2d 1074, 1076 (6th Cir.1987). Therefore, although claimant alleges that she was unable to return to her former job, there is substantial evidence in the record for the Secretary's decision that claimant could return to her former type of work.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Claimant also filed an application in August 1983, which was denied in October 1983, and another application in June 1985, which was denied in August 1985. Claimant did not appeal these denials, and the Secretary has not reopened these determinations
 
 
 [2]
 20 C.F.R. Sec. 404.1512(a) and (b) reads as follows:
 (a) General. In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything which shows that you are blind or disabled. In making a decision we will consider all information we get from you and others about your impairments.
 (b) Kind of evidence. You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you are disabled. We will consider only impairments you say you have or about which we receive evidence. We will help you in getting medical reports when you give us permission to request them from your doctors and other medical sources. If we ask, you must also provide evidence about your--
 (1) Age;
 (2) Education and training;
 (3) Work experience;
 (4) Daily activities both before and after the date you say that you became disabled;
 (5) Efforts to work; and
 (6) Any other evidence showing how your impairment(s) affects your ability to work. (In Secs. 404.1560 through 404.1569 we discuss in more detail the evidence we need when we consider vocational factors.)