Evelyn M. MACK

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

Civ. A. No. 89-0638.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Aug. 9, 1990.

John D. Thompson, Jr., Acadiana Legal Service Corp., Lafayette, La., for Evelyn M. Mack.

Joseph S. Cage, Jr., U.S. Atty., Josette Cassiere, Asst. U.S. Atty., Shreveport, La., for Secretary of Health and Human Services.

## JUDGMENT

SHAW, District Judge.

This matter was referred to United States Magistrate, Mildred E. Methvin, for her Report and Recommendation. After an independent review of the record in this case, the Court concludes that the Report and Recommendation of the magistrate is correct and this Court adopts the conclusions of the magistrate.

IT IS ORDERED, ADJUDGED AND DECREED that the Secretary's motion for summary judgment is denied and that Mack be awarded appropriate benefits consistent with an onset date of October 5, 1987.

## REPORT AND RECOMMENDATION

MILDRED E. METHVIN, United States Magistrate.

This social security appeal was referred to me for the purpose of review, report and recommendation pursuant to this court's standing order of March 3, 1986.

## BACKGROUND

Evelyn Mack was born on February 4, 1942, has an eleventh grade education, and has worked in the past as a housekeeper in

a nursing home (Tr. 66; 33; 86). She applied for supplemental security income on October 6, 1987 claiming disability since October 5, 1987 due to health problems associated with gout, arthritis, high blood pressure, anxiety and an eye disorder (Tr. 66–69).

An administrative hearing was held on July 11, 1988 and on August 1, 1988 an administrative law judge (ALJ) issued an opinion denying benefits (Tr. 28–65; 13–19). The ALJ found as follows: the medical evidence establishes that Mack has a severe impairment resulting from an eye disease called Sjogren's Syndrome, but she does not have an Appendix 1 impairment; Mack's allegations of musculoskeletal complaints of pain "were fabrications" (Tr. 17); there is no objective medical evidence of an underlying pathology causing weakness, dizziness and sleeplessness; Mack can perform work-related activities except for prolonged reading of fine print and working in an environment containing smoke, fumes and chemicals in amounts exceeding those found in home, office or retail settings; Mack must wear sunglasses when outdoors and must take a 10 to 15–minute–break every 2½ hours to lubricate her eyes; Mack has no exertional impairments; Mack is unable to perform her past relevant work; if Mack's nonexertional limitations did not significantly compromise her ability to perform work at all exertional levels, § 204.00 of Appendix 2 indicates that Mack is not disabled; if her capacity to work at all levels were significantly compromised, the remaining work which Mack would functionally be capable of performing would be considered in combination with her age, education, and work experience to determine whether a work adjustment could be made; considering the type of work which Mack is functionally capable of performing in combination with her age, education, and work experience, Mack can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy, such as, child care worker, light cashier jobs, unskilled clerical jobs and laundry worker jobs, therefore, Mack is not disabled within the meaning of the Social Security Act (Tr. 17–19).

On December 21, 1988, the Appeals Council granted Mack's request for review because the ALJ failed to include a specific acknowledgement that once a claimant is found to be unable to perform her past relevant work, the burden of showing that she can perform other work shifts to the Secretary. The Appeals Council noted that a vocational expert testified that Mack could perform such jobs as a child care worker, cashier, clerical worker and laundry worker and that these jobs exist in significant numbers in the national economy. The Appeals Council then concluded:

Once an individual is found unable to perform her past relevant work because of her impairments, the burden shifts to the Secretary to show that there are other jobs existing in significant numbers in the national economy which she can perform, consistent with her medically determinable impairments, functional limitations, age, education, and work experience. In the instant case, a vocational expert testified that, given an individual with the claimant's vocational background and the residual functional capacity for a wide range of work at all exertional levels discussed above, she could perform such jobs as child care worker, cashier, clerical, and laundry worker. The vocational expert also indicated that these jobs exist in significant numbers in the national economy. Therefore, taking into consideration the claimant's age, education, and past relevant work, and using Section 204.00 in Appendix 2 to Subpart P of Regulations No. 4 as a framework for decisionmaking, the Appeals Council concludes that the claimant is not under a "disability" in accordance with Section 416.920(f) of the regulations. In identifying and finding specific jobs the claimant can perform, consistent with her impairments, limitations, age, education, and work experience, the Secretary has met the burden imposed by the Social Security Act regulations.

(Tr. 6).

The decision of the Appeals Council is the final decision of the Secretary from which Mack now appeals (Tr. 5–7).

## ISSUE PRESENTED

Whether the Secretary's finding of non-disability is supported by substantial evidence.

## STANDARD OF REVIEW

This court's review "is limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

> * * * However, we may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision ...

*Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988). *See also Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986); *Neal, supra*, 829 F.2d 528 at 530. "Substantial evidence is more than a scintilla, but less than a preponderance, and is:

> ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

## FINDINGS AND CONCLUSIONS

An x-ray report dated July 25, 1983 shows that Mack had mild soft tissue swelling, but no fracture, in her right ankle (Tr. 152).

On January 6, 1986, a medical report indicated that Mack suffered with red, raw, and sore eyes. On July 10, 1987, Mack experienced foot and ankle pain (Tr. 131).

On August 26, 1987, Mack was diagnosed with keratoconjunctivitis [1] sicca and possibly Sjogren's Syndrome [2] at the L.S.U. Eye Center (Tr. 115; 117–118).

On October 9, 1987, it was recommended that Mack lubricate her eyes with artificial tears and take antibiotics. On October 10, 1987, Mack reported that she felt her condition had improved (Tr. 124). On October 11, 1987, Mack's eye condition continued improving. A culture from her cornea showed growth of a staph infection and as a result, her antibiotics were increased (Tr. 125). On October 12, 1987, Mack had no complaints and her condition continued to improve (Tr. 125).

On October 20, 1987, Mack was interviewed by the Social Security Administration. She stated that she had recently undergone eye surgery and experienced sensitivity to fumes. Mack also stated that she was unable to shop, read, watch television or visit friends. She did attend church (Tr. 109–114).

On November 17, 1987, Dr. B.R. Burgoyle completed a Psychiatric Review Technique Form and stated that Mack suffered with an anxiety-related disorder which was not severe (Tr. 100–108).

On October 28, 1987, Mack was instructed to lubricate her eyes with artificial tears every two hours and apply ointment to her left eye three times per day. She was also instructed to keep her fingers, dust and dirt out of her eye. It was recommended that Mack not drive and she was placed on a low-salt diet. The medical report indicates that she is diabetic (Tr. 121).

On February 9, 1987, Dr. Harold G. Bienvenu, III, a head and neck specialist, examined Mack at the request of her family physician. He reported that Mack had a history compatible with Sjogren's Syndrome with minimal tear and salivary production. Mack also suffered with rheumatoid arthritis. Dr. Bienvenu recommended use of artificial saliva and increased hydration (Tr. 153).

1. Keratoconjunctivitis is defined as inflammation of the cornea. *Stedman's Medical Dictionary*, Fifth Edition, 1982.

2. Sjogren's Syndrome is defined as dryness of the eyes. *Stedman's Medical Dictionary*, Fifth Edition, 1982.

On October 8, 1987, Mack was treated by Dr. S. Kidd for pain, extreme photophobia[3], and blurry vision. Dr. Kidd reported:

Aided visual acuity was R.E.20/30 and L.E.20/200. Biomicroscopy evaluation revealed severe kestitis with mirofilament attached to cornea severely impairing the corneal integrity. I contacted the L.S.U. Eye Center and sent Evelyn back to her doctor for emergency care at which time she was hospitalized.

(Tr. 133).

On November 18, 1987, Mack complained of a swollen and painful left knee. She also experienced pain in her left shoulder and neck and had dryness in her eyes and throat (Tr. 143).

On December 14, 1987, Dr. Charles Boustany completed a general medical report at the request of the Social Security Administration. Mack complained of dry eyes, pain on the left side of her body and high blood pressure. Examination revealed full range of motion of the joints and back. Mack's blood pressure was 150/90. Other examination results were negative. Dr. Boustany diagnosed mild hypertension, borderline diabetes and possible Sjogren's Syndrome. He concluded that Mack was not disabled but noted that her eyes were chronically irritated with decreased vision. He also noted that despite Mack's complaints of joint pain, she had full range of motion and no swelling or redness (Tr. 132).

On December 31, 1987, Dr. Kidd treated Mack for complaints of blurred vision. Mack reported that she had undergone tear duct surgery at the L.S.U. Eye Center and that tests showed her blood sugar and cholesterol were elevated. Continued use of artificial tears was recommended (Tr. 133).

On January 5, 1988, Dr. Quentin Falgoust examined Mack for photophobia. She reported that she was unable to do her usual household chores. Dr. Falgoust recommended tear duct probing and closure. He also recommended use of artificial tears and ointment (Tr. 134).

On February 3, 1988, Dr. Falgoust reported that Mack's vision in both eyes with correction was 20/100. He diagnosed dry eye syndrome and recommended use of artificial tears (Tr. 137–140).

On February 26, 1988, Mack underwent a complete ophthalmic examination at the Azar Eye Clinic. Her vision in both eyes was 20/40 with correction. Examination findings were consistent with severe dry eyes and it was recommended she increase the frequency of use of her topical moisturizers (Tr. 161).

On March 3, 1988, Dr. Cheryl Neu of the Azar Eye Clinic reported that Mack's condition was essentially unchanged. On April 4, 1988, her visual acuity was unchanged "but a mild improvement of her corneal punctate staining was observed" (Tr. 161). Dr. Neu reported:

Will continue with frequent use of topical moisturizers. I do feel that she will be unable to work because of hourly need for medicine for her pain. This problem is usually unrelenting and I anticipate only slight improvement. She is disabled for at least a three to five year period.

(Tr. 163).

On June 3, 1988, Dr. Neu concluded:

Although Ms. Mack does not meet the legal criteria for blindness, her visual ability at present, barely allows her to legally maintain a driver's license. In addition, as a result, the level of persistent irritation must be quite disconcerting to her. I feel that her vision is sufficiently handicapped to the point that maintaining many types of employment are in question. The above information should be weighed against her previous professional and vocational training when considering retraining her for other sources of employment.

(Tr. 162).

The record also contains a letter from Celestine Favor, Mack's supervisor at the Nursing Home. She states that Mack suffered with "very swollen and sore" eyes,

---

**3.** Photophobia is defined as abnormal sensitivity to light. *Stedman's Medical Dictionary*, Fifth Edition, 1982.

high blood pressure, swollen feet, and fainting spells (Tr. 159). Favor was concerned that Mack could hurt herself or a patient due to her · fainting spells and, therefore, terminated her employment (Tr. 159–160).

At the administrative hearing, Mack testified that she had experienced fainting spells at work due to high blood pressure. She also experienced pain in her back and arms and weakness in her knees. She elevated her legs to reduce the swelling and soaked in warm water to relieve pain. Mack testified that she was unable to drive, watch television or read due to her eye problems. She had difficulty sleeping and became weak and dizzy after walking 6 blocks. Mack wore glasses which "help[ed] some" but did not relieve her sensitivity to light (Tr. 46). She also experienced dryness in her throat due to an inability to produce saliva. Mack's eyes became itchy and would burn when she attempted to do household chores. She was unable to do any type of chores in the ·summer due to the heat. In the morning, she flushed her eyes with medication to remove mucus. It took 2 hours for her eyes to clear. Mack stated she must lubricate her eyes every 2 hours (Tr. 40–53).

Judy Lide, a vocational rehabilitation counselor, testified that Mack would be unable to perform her past relevant work due to the use of chemicals in her job at the nursing home. Lide concluded that Mack could work as a child care worker, in a light cashiering job, as an unskilled clerical worker, and as a laundry worker. Lide stated that the cashier, clerk and child care jobs would be adversely affected if Mack had to take a break to apply her eye lubricant every half hour. Upon review of Dr. Cheryl Neu's report stating that Mack was unable to work due to her eye impairment, Lide stated that Mack would not be able to perform the jobs previously listed (Tr. 55–60).

■ Upon review of the record as a whole, I find that both the ALJ and the Appeals Council failed to give the correct weight to the treating physicians' reports and opinions. Mack's treating physicians'

reports consistently contain diagnoses of inflammation of the cornea and dryness of the eyes. Poor salivary production is also documented. Mack's difficulty with eye infection, mucus accumulation, and light sensitivity is also well-documented. Mack must frequently lubricate her eyes with artificial tears. She also suffers with blurred vision. Dr. Neu stated that Mack's visual acuity "barely allows her to legally maintain a driver's license" (Tr. 162). She also stated that Mack had to apply medication to her eyes hourly and experience persistent irritation. The only doctor's report which contradicts the treating physicians' statements are that of Dr. Boustany who examined Mack at the request of the Social Security Administration. It should be noted that Dr. Boustany is a general practitioner and not an ophthalmologist and only examined Mack one time.

■ The opinion, diagnosis, and medical evidence of a treating physician whose familiarities with the patient's injuries, treatment, and responses over a length of time, should be accorded considerable weight. *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984); *Smith v. Schweiker,* 646 F.2d 1075, 1081 (5th Cir.1981). Furthermore, the reports of treating physicians are to be given considerable weight over that of consultative examiners unless there is good cause to do otherwise. *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir.1981); *Scott v. Heckler,* 770 F.2d 482 (5th Cir.1985); *Hurst v. Secretary,* 753 F.2d 517 (6th Cir.1985); *Hillsman v. Bowen,* 804 F.2d 1179 (11th Cir.1986); *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987).

Considering the weight which is to be given to the treating physicians' reports, Dr. Boustany's conclusions cannot constitute the substantial evidence needed to uphold a finding of non-disability. It is also important to note that the vocational expert testified that if Mack had to frequently apply medication to her eyes, this would interfere with her ability to be employed. The evidence shows that Mack's physicians did recommend frequent application of her medication as opposed to only every 2 hours.

For the foregoing reasons, it is my recommendation that the Secretary's motion for summary judgment be denied and that Mack be awarded appropriate benefits consistent with an onset date of October 5, 1987.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the District Judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.