# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3126

_____

Marilyn Brosnahan,              *

                            *

        Appellant,         *

                            *   Appeal from the United States

      v.                  *   District Court for the

                            *   District of South Dakota.

Jo Anne B. Barnhart, Commissioner,  *

Social Security Administration,    *

                            *

        Appellee.          *

_____

Submitted: June 9, 2003
Filed: July 15, 2003

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

BYE, Circuit Judge.

Marilyn Brosnahan appeals the district court's order affirming the denial of disability insurance benefits. In her July 1998 application, Brosnahan alleged disability since April 1997 from a back injury, fibromyalgia,[1] fatigue, and pain-related

_____

[1] Fibromyalgia, a chronic condition recognized by the American College of Rheumatology (ACR), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points. Treatments for fibromyalgia include cold and heat

depression, irritability, and concentration and sleeping difficulties. The issues on appeal are whether (1) Brosnahan is disabled under the listing for affective disorders, see 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (2003), (2) the administrative law judge (ALJ) properly discounted the opinion of a psychologist about Brosnahan's residual functional capacity, and (3) the ALJ's credibility findings are supported by substantial evidence. We reverse as to the issue of credibility findings.

I

According to Brosnahan's testimony at a May 2000 administrative hearing, she was almost forty-seven and had earned a GED. She had last worked in April 1997 as a home-health-care provider, although she had had pain since a June 1996 job injury. By the time of the hearing she had widespread pain, flu-like stiffness and soreness, depression, memory and concentration problems, problems using her arms and hands, insomnia, and fatigue; her symptoms varied in frequency and intensity. Her medications included two analgesics, which she used according to her pain level, and two antidepressants; she believed they had caused her to have problems with vision, to lose her balance, and to feel "dopey."

Brosnahan further testified that her functional ability was unpredictable. She had perhaps twenty good days a month. Occasionally, on bad days, she could get out of bed only to use the bathroom and to take medicine. She napped several hours most days, and she drove some, although at times she had to pull over to rest or to have someone else drive. She tried to get out of the house, but at times her fatigue, pain, and weakness had caused her to cancel plans--including two doctor's appointments, after which she had hesitated to reschedule. She liked being around people, and had

_____

application, massage, exercise, trigger-point injections, proper rest and diet, and medications such as muscle relaxants, antidepressants, and anti-inflammatories. See Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jacqueline L. Longe et al. eds., 2d ed. 2002).

taken a two-day trip, but if she did not feel well she wanted to be alone. She tried to walk each day, and had on occasion walked two miles without resting. She also had used a treadmill and exercise bike, but after doing so for a couple of days she ended up in bed. Her family helped with household chores; she had problems reaching and bending, and it bothered her to lift even thirteen pounds. However, she did cook simple meals, grocery shop and vacuum a little, and she did do dishes and laundry when she could. Although she had asked her doctors in 1999 if she could try using her self-propelled lawn mower, and she had tried to do so, she stopped after mowing only for a little while.

The medical records reflect that in June 1996, Brosnahan reported to an internist that she suffered shoulder and back pain after lifting a home-health client. Despite prescription medications, trigger-point injections, and physical therapy, Brosnahan continued to complain of back pain, which had worsened by the time she quit her job in April 1997. Throughout 1997 Brosnahan continued to seek care for her back pain from the internist and from rehabilitation specialist Brett Lawlor. She twice reported an inability to cope with her pain, and she also reported sleep dysfunction, swelling in her back, and anxiety. The physicians found multiple tender areas and spasms, and after an MRI showed minimal disk problems, the physicians diagnosed fibromyalgia, for which they prescribed physical therapy, exercise, a nonsteroidal anti-inflammatory, antidepressants, and counseling. Meanwhile, in fall 1997 Brosnahan saw a psychologist for pain management; he diagnosed adjustment disorder with depressive features.

In January 1998 Brosnahan first saw rheumatologist James Englebrecht, who noted blood tests for arthritis had been normal, found multiple consistent and reproducible tender points, and prescribed a different anti-inflammatory. Brosnahan also underwent a functional capacity evaluation (FCE), which indicated that she could occasionally bend, stoop, squat, climb, crouch, and kneel; could frequently balance, walk long distances, and crawl; could sit for four to five hours, and stand for

four hours at forty- to fifty-five-minute intervals; and could walk for five to six hours. The lifting, carrying, pushing, and pulling restrictions were up to thirty-nine pounds occasionally and up to twenty-four pounds frequently, and Brosnahan was limited to using her upper extremities in hourly intervals for a seven-hour total. Dr. Lawlor, who was treating Brosnahan for her mechanical low-back pain, opined that the FCE findings were "appropriate," noting they were not related to her fibromyalgia, which could cause more marked limitations.

About monthly during the remainder of 1998, Brosnahan saw Dr. Englebrecht (for fibromyalgia) and Dr. Lawlor, reporting at times some improvement and at times a flare-up of pain, fatigue, joint stiffness, aching, and variable sleep patterns, as well as medication ineffectiveness. Medication changes were made twice due to gastrointestinal symptoms. In August Dr. Englebrecht noted fair-to-good clinical control of the fibromyalgia, despite finding multiple tender points. Brosnahan's counsel sent her to psychologist Leslie Fiferman and to a rehabilitation consultant. Based on testing, a mental-status examination, and interviews, Dr. Fiferman assessed low-average to average intelligence; social withdrawal; some memory, attention, concentration, and verbal-fluency problems; mild anxiety; and mildly impaired judgment and insight. She diagnosed recurrent and severe major depression, and dementia from chronic pain syndrome. Dr. Fiferman opined Brosnahan was moderately to severely disabled, as her emotional function was moderately to severely impaired, and her cognitive and social functions were moderately impaired. Assessing anxiety, depression, concentration and attention difficulties, and pain behaviors, the rehabilitation specialist opined that Brosnahan was limited to part-time, insubstantial, or sporadic employment due to her physical inability to work consistently.

Social Security Administration physicians and psychologists determined, based on August and October record reviews, that Brosnahan's mental impairments were not severe, and that she could lift, carry, push, or pull twenty pounds occasionally and

ten pounds frequently; could sit, stand, or walk six hours in a workday; and could occasionally climb, balance, stoop, kneel, crouch, or crawl. In December Dr. Englebrecht noted that increasing exercise within the FCE restrictions would help Brosnahan's fibromyalgia the most.

In 1999 Brosnahan saw Dr. Englebrecht twice and Dr. Lawlor once, and she had a diagnostic test in September which indicated that an intervertebral disk was not the source of her pain. In April Brosnahan reported increased generalized discomfort and sleeping difficulties, and Dr. Englebrecht found more tender points and encouraged exercise. In August Brosnahan told Dr. Lawlor her comfort varied and her medications were reasonably effective, but her pain had increased after a long walk. That same month, Dr. Englebrecht found her persistent fibromyalgia under control, but noted decreased energy.

In 2000 Brosnahan complained to Dr. Englebrecht in January of the unpredictability and variability of her achiness, stiffness, and fatigue. He nevertheless found she was doing "reasonably well considering the gravity of her condition." In April Dr. Lawlor noted Brosnahan's mechanical low-back pain had resolved but she had developed tendonitis in her shoulder after falling. Brosnahan told him she was not taking medication regularly and she was exercising more. Dr. Fiferman conducted additional tests in June which revealed scores in the fifth to seventy-third percentile on thirteen memory-related areas, and moderate to severe depression. She recommended psychotherapy as she had in August 1998, and opined that Brosnahan was unemployable as her symptoms worsened unpredictably, and that while her impairments in memory and most other psychological areas were mild to moderate, impairments in most of her remaining functional domains were moderate to severe.

At the hearing, the ALJ posed the following hypothetical to a vocational expert (VE). He described a claimant of Brosnahan's age and education who could perform

light or sedentary work with the following limitations and capabilities: postural shifts; only occasional stooping, crouching, and repetitive upper-extremity movement, but frequent interaction with others, and frequent grasping requiring fine dexterity; no climbing, balancing, twisting, kneeling, driving, or crawling; no exposure to heights, dangerous machinery, or temperature extremes; and "moderate" (ability to function satisfactorily) restrictions in attention, concentration, and capacity to follow work rules. The VE opined such a claimant could work as a first-aid attendant, food-and-beverage order clerk, addresser, or arcade attendant; if the grasping with fine dexterity were changed to occasional, the claimant could work as a call-out operator, surveillance-system monitor, or photo-booth or rental clerk. The identified jobs were available in substantial numbers nationally and in South Dakota. The VE further testified that if the claimant could not perform reliably on a full-time basis due to pain and fatigue, or if her attention or concentration were seriously limited, she could not work, and even one absence a month in an unskilled job was a problem.

In his adverse decision, the ALJ found (1) Brosnahan's disk disease, fibromyalgia, tendonitis, myofascial pain syndrome, adjustment disorder with depressive features, major depression, and pain-related dementia, were severe, but not of listing-level severity, alone or in combination; (2) her subjective complaints were not fully credible; (3) her residual functional capacity was as described in the hypothetical (plus she was limited to following simple instructions and working in a low-stress environment); and (4) she could not perform her past relevant work, or perform a full range of light work, see 20 C.F.R. § 404.1567(b) (2003) (light work involves lifting or carrying up to twenty pounds occasionally and ten pounds frequently, and good deal of walking or standing, or sitting most of time with some pushing and pulling of arm or leg controls), but she could perform the jobs the VE identified. In a psychiatric review technique form, the ALJ found slight limitations in daily-living activities and social functioning; "often" deficiencies in concentration, persistence, and pace; and no episodes of deterioration or decompensation at work or in work-like settings. The Appeals Council denied review, after considering

-6-

additional records from neurologist Robert Finley, who saw Brosnahan in October 2000 for variable and worsening confusion and memory loss.  Dr. Finley's "mini mental status exam" and all other areas examined--motor and sensory function, reflexes, gait, and coordination--as well as a brain MRI, were normal.  Brosnahan sought judicial review, and the district court upheld the Commissioner's ruling.

II

On review our role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole; substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  In determining whether substantial evidence exists, we consider not only evidence that supports the Commissioner's decision, but also evidence that detracts from it.  See Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000) (when Appeals Council denies review after considering new evidence, this court also reviews new evidence in making substantial-evidence determination).

III

Brosnahan contends she is disabled under Listing 12.04 (affective disorders).  See Shontos v. Barnhart, 328 F.3d 418, 423-24 (8th Cir. 2003) (at step three of five-step process, Commissioner must determine whether claimant's impairment meets or equals one of listed impairments; claimant whose impairment meets medical criteria of listed impairment is presumptively disabled and no further inquiry is required).  However, we agree with the ALJ that Brosnahan fails to meet at least two of the Listing's "B" requirements, namely (1) marked[2] restriction in daily-living activities;

_____

[2]"Marked" means several activities or functions are impaired, or one is impaired such that it interferes seriously with the ability to function independently,

(2) marked difficulties in social functioning; (3) marked difficulties in concentration, persistence, or pace; and (4) repeated, extended episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2003) (claimant must meet category A requirements and at least two category B requirements). Specifically, Dr. Fiferman found Brosnahan's impairments in memory and most other psychological areas to be only mild to moderate, Brosnahan testified that she socialized some, and there is no evidence in the record of decompensation.

IV

Brosnahan also contends that the ALJ erred by discounting psychologist Fiferman's June 2000 opinion, namely, that Brosnahan could not work because her symptoms worsened unpredictably, and that while her impairments in memory and most other psychological functioning were mild to moderate, impairments in most of her remaining functions were moderate to severe. The ALJ discounted the opinion because it was based partly on consideration of physical impairments, an area outside Dr. Fiferman's expertise, and in any event, the final determination of disability was for the ALJ. Cf. Krogmeier, 294 F.3d at 1023 (ALJ properly disregarded treating psychiatrist's opinion that claimant was disabled in part, because statement that claimant could not be gainfully employed was not medical opinion but opinion on application of statute, which is task assigned solely to discretion of Commissioner). We agree with the ALJ, and we note the following as well. First, the ALJ included limitations in the hypothetical for Brosnahan's alleged mental impairments. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (ALJ is to determine residual functional capacity based on all relevant evidence). Second, Brosnahan quit counseling in 1997 after four sessions, apparently ignored Dr. Fiferman's later recommendation for psychotherapy, and linked her activity limitations to physical

appropriately, and on a sustained basis. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 C (2003).

problems. Cf. Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant's mental impairment was not severe where he was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and activities were not restricted by emotional causes). And third, Dr. Fiferman was only a consulting psychologist, whose opinion was based on two interviews and testing sessions, and whose mental-status-examination findings differed from those of neurologist Finley. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995) (ALJ may reject any medical expert's conclusions if they are inconsistent with record as whole).

V

Finally, Brosnahan complains that the ALJ failed to identify the inconsistencies upon which he based his credibility findings. Although the ALJ gave multiple reasons for discrediting Brosnahan, we find those reasons unsupported by the record. The ALJ found Brosnahan to be not entirely credible in part because of her daily activities and lifestyle, but we have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity. See Kelley v. Callahan, 133 F.3d 583, 588-89 (8th Cir. 1998). The ALJ also relied on "the degree of medical treatment required" and the reports and findings of Brosnahan's health care providers. However, the ALJ did not explain "degree of medical treatment required" or specify the physician's reports and findings upon which he relied, and Brosnahan received treatments recommended by ACR for fibromyalgia. The ALJ also suggested Brosnahan had made inconsistent statements about her pain and ability to walk and lift,[3] but we find that the statements reflect

---

[3]Brosnahan reported that her pain occurred "all over" and "never end[ed]"; that she had "unpredictable" pain "most of the time" from her low back to her neck, shoulders, and arms, and in her legs and hips; that her pain increased if she stood or sat too long, but sitting or lying down decreased the pain from standing or walking;

Brosnahan's attempt to describe the variability of her symptoms. And in his medical-records summary, the ALJ stated that Brosnahan had "sought little treatment from August 1998 until August 1999," yet she saw Dr. Englebrecht in December 1998 and April 1999. The ALJ also stated that after August 1999, Brosnahan had no treatment until January 2000, but the record shows she had a diagnostic test in September 1999.

The ALJ pointed to Brosnahan's testimony about taking medications only as needed, and stopping an antidepressant on her own; about mowing the lawn, which he found inconsistent with a statement in the record from her husband that she no longer did yard work; about not seeking mental health treatment or needing surgery; and about missing doctor's appointments and participating in vocational rehabilitation. We also disagree with these reasons for discrediting Brosnahan. Concerning her sporadic use of medication, Brosnahan reported medication side effects on multiple occasions, and periodically complained about medication being altogether ineffective. As to lawn-mowing, she testified in 2000 about her doctor-approved attempts to mow the lawn in 1999, and we see no conflict with her husband's statement--in 1998--that she did no yard work; further, she testified that her mowing attempts in 1999 were minimal and unsuccessful. The lack of any need for surgery is also not a reason to discredit Brosnahan: the ACR does not recommend surgery for fibromyalgia. Further, Brosnahan testified about missing two doctor's appointments only because of the very symptoms for which she seeks benefits, namely, she felt too weak and ill to dress, and she hesitated to reschedule not knowing whether she would be able to keep a rescheduled appointment. Finally, we fail to see how participating in vocational rehabilitation during the period after her injury undermines her credibility or shows anything other than a good-faith attempt to return to work.

---

that her ability to walk depended upon where she hurt; and that she had problems lifting a thirteen-pound watering can, but it was less painful to lift other items that weighed more.

We note that the ALJ may not discredit a claimant solely because her subjective complaints are not fully supported by objective medical evidence. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002). Further, Brosnahan's testimony and reports to the SSA are supported by objective medical evidence of fibromyalgia--consistent trigger-point findings--and by her consistent complaints during her relatively frequent physicians' visits of variable and unpredictable pain, stiffness, fatigue, and ability to function. We have recognized that fibromyalgia can be disabling because of its potential for sleep derangement and resulting daytime fatigue and pain. See Kelley, 133 F.3d at 589. Notably, the VE testified that a claimant who could not perform reliably on a full-time basis because of pain and fatigue could not work. Finally, although the ALJ's residual-functional-capacity findings are consistent with the FCE findings, the FCE findings are contradicted by repeated assessments of multiple trigger points and do not take into account Brosnahan's consistent reports to her doctors of her fluctuating capacity to function. Thus, we conclude that remand is warranted for clarification by Dr. Englebrecht--who is treating Brosnahan for fibromyalgia, and who merely recommended she exercise within the FCE restrictions as therapy rather than as a measure of what she could do on a sustained basis--on whether Brosnahan is capable of substantial gainful employment. Cf. Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002) (where long-term treating doctor's entries and opinion letter were somewhat cursory, ALJ was obligated to contact him for added evidence and clarification of claimant's residual functional capacity).

VI

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.