PER CURIAM.
In this appeal challenging the denial of Social Security disability benefits, claimant Karen Germany-Johnson assigns as error the “second step” ruling by the administrative law judge (ALJ) that her medical condition was not severe enough to advance the sequential evaluation process, as well as the ALJ’s failure to give appropriate deference to the opinion of her treating-physician. Denial of benefits was affirmed by the Appeals Council and by the district court. We conclude that the ALJ erred as a legal matter by (1) applying the wrong standard of review at the second step of the five-step evaluation process and (2) failing to comply with the Social Security Administration’s rule that a decision denying benefits must include specific reasons for rejecting the opinion of a treating physician, a requirement reiterated in our opinion in Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir.2004). As a result, this case must be remanded to the ALJ for further consideration.
I. FACTUAL AND PROCEDURAL BACKGROUND
After working steadily from 1969 to 1996, with a four-year break in the early 1980s to start a family, Germany-Johnson was involved in an automobile accident in 1996 that apparently caused neck and back pain, which in turn exacerbated nerve damage she had experienced as the result of three surgeries on her lower spine dating back to 1972. Unable to maintain full-time work, she held several part-time or short-term jobs over the next six years, while she was in the care of her primary physician, Dr. Mark Meacham. In 1998, she was seen by an orthopedic specialist, Dr. John Collis, who diagnosed her with chronic shoulder and neck pain due to arthritic disc disease and severe pain due to C5 disc herniation and extrusion. Her efforts at physical therapy resulted in the onset of vertigo, which was serious enough to require hospitalization. In 2000, Germany-Johnson developed an ulcer due to taking medication for her neck and low back pain. Two years later, Dr. Meacham referred Germany-Johnson to Dr. Raynor, a rheumatologist, who found that she was “likely” suffering from fibromyalgia.
In November 2002, the claimant was also referred by Dr. Meacham to Dr. Gardziola, a neurologist. Dr. Gardziola recognized that she was the victim of *773 chronic pain but said that he could not easily identify its source because it did not fit a neuropathic pattern. He nevertheless noted that Germany-Johnson had a long history of muscle pain and spasm.
Germany-Johnson applied for disability benefits in 2002. In December of that year, she was seen by Dr. Alok K. Bhaiji, a consulting physician chosen by the Social, Security Administration. He found that the claimant had vertigo and herniated discs and ordered an MRI. It revealed Germany-Johnson had annular bulging at the L4-L5 area and left-sided disc herniation at L5-S1. Another MRI taken of the cervical spine revealed bony degenerative changes in her neck. Other diagnoses included spondylosis and lordotic reversal, scoliosis with pelvic tilt, and a peptic ulcer caused by the various pain medications that Germany-Johnson was taking.
In February 2003, Dr. Meacham listed diagnoses of myositis, cervical syndrome, and myalgia and noted that the claimant’s pain was at a level six out of ten. That month Dr. Gardziola found that the claimant’s condition remained unchanged and that she continued to have pain and weakness. By the end of February, Dr. Meac-ham had written a letter to the claimant explaining that he had treated her for several years and that he had “NO doubts that the combination of medical diagnoses you have contribute to significant difficulty with maintaining gainful employment.” A year later, on January 2, 2004, Dr. Meac-ham wrote another letter, noting that the claimant had been his patient since the mid-1990’s and had undergone exhaustive evaluations of her physical symptoms by many specialists, without any resolution of her neck pain and fibromyalgia symptoms. He concluded that Germany-Johnson was unable to sustain work and that her symptoms were debilitating.
In applying for disability benefits in 2002, Germany-Johnson described nerve pain in her back and neck, painful muscle spasms, and numbness in her coccyx, saying that the pain made it difficult to perform normal tasks like walking, sitting, standing, doing laundry, lifting cookware, and grocery shopping, among others. She also said that she needed help from her family in preparing meals and house-cleaning and that she was largely housebound. Her application was denied initially and also upon reconsideration.
Germany-Johnson then requested a hearing before an administrative law judge, at which she appeared with counsel and testified. A medical expert and a vocational expert also testified. The ALJ determined that Germany-Johnson was not disabled, finding that she “d[id] not have any impairment or impairments [that] significantly limit her ability to perform basic work-related activities” and, therefore, “d[id] not have a severe impairment.” The Appeals Council denied the claimant’s request for review and a magistrate judge, sitting by agreement as the district court, found that there was substantial evidence to support the decision of the administrative law judge and upheld that decision.
II. DISCUSSION
A. Standard of Review
We exercise de novo review of district court decisions in Social Security cases. See Valley v. Comm’r of Soc. Sec., 427 F.3d 388, 390 (6th Cir.2005). The underlying findings of the administrative law judge are reviewed for substantial supporting evidence. See 42 U.S.C. § 405(g). Substantial evidence is “ ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’ ” Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).
*774 Under applicable Social Security regulations, the merit of a disability claim is determined by' following a sequential five-step analysis. See 20 C.F.R. § 404.1520. The ALJ must determine, first, whether the claimant is working; second, whether the alleged impairment is severe; third, whether the impairment meets or equals a listed impairment and hence has a certain level of severity; fourth, whether the claimant can still do past relevant work; and, finally, when considering the claimant’s age, education, work experience, and residual functional capacity, whether the claimant can do other work. See 20 C.F.R. § 404.1520(a)(4). The burden is on the claimant to satisfy the first four steps. See Longworth v. Comm’r Soc. Sec. Admin.., 402 F.Sd 591, 595 (6th Cir.2005). In this case, the ALJ followed the required evaluation only through the second step, finding that the claimant was not disabled because her impairments were not “severe.”
B. Severity of Impairment
The step-two severity determination is phrased in the negative: if a claimant does not have a severe medically determinable physical or mental impairment, for at least twelve months, or a combination of impairments that is severe, the claimant is not disabled. 20 C.F.R. § 404.1520. In this circuit, the claimant’s burden of proof at step two “has been construed as a de minimis hurdle in the disability determination process ... [A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.” Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988) (emphasis added) (citing Farris v. Sec’y of Health and Human Serv., 773 F:2d 85, 89-90 (6th Cir. 1985)). See also Bowen v. Yuckert, 482 U.S. 137, 158-59, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (“Only those claimants with slight abnormalities that do not significantly limit any ‘basic work activity’ can be denied benefits without undertaking this vocational analysis.”) (O’Connor, J., concurring). ' Furthermore, step-two severity review is used primarily to “screen out totally groundless claims.” Farris, 773 F.2d at 89.
Clearly, Germany-Johnson’s impairments were not groundless under 20 C.F.R. § 404.1521, because the record establishes that, without question, they interfered with her basic work activities. Basic work activities are defined as “the abilities and aptitudes necessary to do most jobs” such as “(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.” 20 C.F.R. § 404.1521. The record reveals to our satisfaction that the claimant’s back and neck pain and fibromyalgia limited her ability to work. Beyond the personal anecdotes from Germany-Johnson listed above, Dr. Bhaiji found from her symptoms that she could have difficulty walking and lifting, and Dr. Meacham, the claimant’s treating physician, described her as totally disabled from working.
The question in this appeal thus becomes whether there is also substantial evidence to support the opposite eonclu-. sion — that the claimant’s impairments are so slight that they have little, if any, impact on her work capacity. If substantial evidence supports the decision of the administrative law judge, “this Court will defer to that finding ‘even if there is substantial evidence in the record that would have supported an opposite conclusion.’ ” Longworth, 402 F.3d at 595 (quoting War *775 ner v. Comm’r of Soc. Sec., 375 F.3d 387, 390 (6th Cir.2004)). See also Cutlip v. Sec’y of Health and Human Serv., 25 F.3d 284, 286 (6th Cir.1994) (“If the Secretary’s decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, see Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, see Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc).”).
In this circuit, “substantial evidence means more than a scintilla of evidence. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.” Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir.1985) (quoting Lashley v. Sec’y of Health and Human Serv., 708 F.2d 1048, 1053 (6th Cir.1983)). Moreover, “[disability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result.” Mowery, 771 F.2d at 971. As in Mowery, although the ALJ and the district court gave what can best be described as “lip service” to this principle,’ we conclude that both courts came to the wrong conclusion with regard to this claimant. Id.
The ALJ acknowledged in his order that “the record indicates claimant has diagnoses of fibromyalgia with degenerative disc disease of the cervical and lumbar spines.” He concluded, however, that the record also “establishes that these impairments are not severe impairments,” based upon what he identified as the claimant’s “normal” characteristics. For example, after describing diagnoses of annular bulging, disc herniation, cervical disc disease, and bony degeneration, the ALJ pointed to the “essentially normal” EMG and nerve conduction. However, he neglected to mention that the report also suggested that further evaluation by MRI was dictated by “markedly prolonged peroneal and posterior tibial F waves.” The administrative law judge next alluded to physical examinations that have “noted normal range of motion of the cervical spine, lumbar spine, as well as normal range of motion of the upper and lower extremities.” But, the source of these findings, although not cited, was the physical examination conducted by Dr. Bhaiji, the consulting-physician hired by the Social Security Administration, who also noted the claimant could have difficulty with walking and lifting, two basic work activities under 20 C.F.R. § 404.1521, and who recommended a further neurological evaluation of Germany-Johnson.
Pointing to the claimant’s “normal sensation, normal reflexes, and normal muscle strength ... [and also] normal gait,” the ALJ concluded that “while the claimant alleges that she is disabled by her pain[,] her complaints are not supported by the overall objective medical evidence in the record which is normal.” However, one of the bases for these “normal” findings was the report of Dr. Gardziola that also described the claimant’s “long history of muscle pain and spasm ... [from] pinching in her neck, which creates a chain reaction to pinching and pain in her buttock, legs, feet, shoulders, and neck.”
Although the administrative law judge focused on what he perceived to be “normal” findings by the medical experts, the caveats provided by those same doctors indicate that — taking the record as a whole and including both the doctors who provided normal findings and those who found the claimant had a severe disability — there is not substantial evidence to support the administrative law judge’s finding that the claimant’s impairments are not “severe,” at least for purposes of step-two analysis. *776 See Hurst v. Sec’y of Health and Human Serv., 753 F.2d 517, 519 (6th Cir.1985) (“failure to consider the record as a whole undermines the Secretary’s conclusion”). Indeed, in our judgment the evidence in the record that can be considered to establish Germany-Johnson’s condition as “normal” is minimal and is offset by the not-normal findings in the same reports.
The administrative law judge also based his finding that the claimant’s disability is not severe on the nature of her prescribed medications, noting that they are commonly used to treat mild symptoms and concluded from that fact “that the claimant [h]as an impairment which is so slight, it would not be expected to interfere with her ability to work or a non-severe impairment.” But this observation wholly overlooks evidence in the record that Germany-Johnson took these medications in such large doses that she developed an ulcer and had to stop taking them. Indeed, Dr. Cain found the claimant had an ulcer due to “anti-inflammatory drug use.” Moreover, as noted by her treating physician, Dr. Meacham, the prescription drugs Vioxx and Celebrex were ineffective to control Germany-Johnson’s pain symptoms, as was Tylenol. Although the use of relatively mild medications may be taken to indicate that the claimant does not suffer from “severe disabling pain,” Maher v. Sec’y of Health and Human Serv., 898 F.2d 1106, 1109 (6th Cir.1989) (citing Kimbrough v. Sec’y of Health and Human Serv., 801 F.2d 794, 797 (6th Cir.1986)), the Tenth Circuit has held that when the claimant suffers from the side effects of using pain relievers, an ALJ cannot rely on the non-use of those same pain relievers to evaluate the claimant’s impairment. See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir.1987) (“Unrefuted testimony by both [doctors] indicated that anti-inflammatory and anti-pain medication appropriate for [the claimant’s] degenerative arthritic condition was contraindicated because of the side effects of stomach irritation. Although pain abatement would enhance [the claimant’s] ability to perform sedentary work, the side effects would interfere with restoration of his ability to work.”).
The ALJ also focused on the testimony of Dr. Hershel Goren, one of the agency’s medical experts, but Dr. Goren examined only the claimant’s medical file, not the claimant herself, in preparation for testimony regarding the validity of the other expert’s diagnoses, the degree of the claimant’s dysfunction, and both her mental and her physical capacities. Dr. Goren concluded that the claimant’s symptoms did not equal any Social Security Administration listings, that she would not be impaired in a work setting]' and that she would have no restrictions on her functional capacity. He based his conclusions on his determination that her symptoms did not necessarily correlate with any of the MRI abnormalities and, therefore, that those abnormalities thus could not be considered objective findings.
Our review convinces us that, even after extending appropriate deference to the ALJ’s decision, the denial of relief at step two was not supported by substantial evidence. First, the opinion of a non-examining physician such as Dr. Goren should be given relatively little weight “if it is contrary to the opinion of the claimant’s treating physician.” Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987) (“[t]he testimony of [non-examining physician] cannot provide a sufficient basis for rejecting the opinions of plaintiffs treating physicians ... ”) (citing Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir.1985)). See also Cohen v. Sec’y Health and Human Serv., 964 F.2d 524, 528 (6th Cir.1992) (“medical opinions and diagnoses of treating physicians are entitled to great weight, and if uncontradicted, are entitled to complete deference”) (citing King v. Heckler, 742 *777 F.2d 968, 973 (6th Cir.1984)). In this case, Dr. Goren’s opinion contradicts that of the claimant’s treating physician, Dr. Meac-ham, whose opinion was largely, if not completely, overlooked by both the ALJ and the district court.
In giving controlling weight to Dr. Goren’s opinion and to only selective portions of reports by the agency’s other consulting physician, Dr. Bhaiji, and the claimant’s secondary physician, Dr. Gardziola, the ALJ failed to give effect to the agency’s “treating source” regulation, 20 C.F.R. § 404.1527(d)(2). That provision requires an administrative law judge to give more weight to opinions from treating sources if the treating physician’s opinion is “well-supported by medically acceptable clinical and laboratory diagnostic techniques.” Moreover, the regulation also requires the judge to state “good” reasons for the weight given the opinion of a claimant’s treating physician. 20 C.F.R. § 404.1527(d)(2). Hence, a decision denying benefits “must contain specific reasons for the weight given to the treating source’s medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source’s medical opinion and the reasons for that weight.” Soc. Sec. Rui. 96-2p 1996 WL 374188 at *5 (1996). See also Wilson v. Comm’r of Soc. Sec., 378 F.3d 541, 544 (6th Cir.2004).
The substantive arm of the regulation, referred to in this circuit as the “treating physician rule,” creates “a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.” Rogers v. Comm’r of Soc. Sec., 486 F.3d 234, 242 (6th Cir.2007). Even if the treating physician’s opinion is not given controlling weight, the administrative law judge must still determine how much weight is appropriate for the opinion, considering: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician’s conclusions and the evidence to support them; and (3) the specialization of the treating physician. See id.
Once the weight to be given the opinion is determined, the procedural arm of the regulation requires the ALJ to “provide good reasons for discounting treating physicians’ opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source’s medical opinion and the reasons for that weight.” Id. (internal quotation marks omitted). These reasons are particularly important when the treating physician has diagnosed the claimant as disabled. See id. As we held in Wilson, “A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source’s opinion and, thus, a different outcome on remand is unlikely.” 378 F.3d at 546. Ultimately, “a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.” Rogers, 486 F.3d at 243.
Here, the only evidence that the ALJ cited to refute the severity of the claimant’s diagnoses was the “normal” findings of two non-treating doctors. But, the judge was selective in parsing the various medical reports and simply failed altogether to address the findings of Dr. Meacham, the physician who had been treating the claimant for almost ten years, beyond merely setting them out in narrative fash *778 ion. He apparently did not give any weight to them, nor did he explain why he had discounted the treating physician’s opinion that the claimant was disabled from working, beyond saying that “her complaints are not supported by the overall objective medical evidence in the record which is normal.” The record thus establishes as a matter of law that the case must be remanded to the administrative law court for further consideration. See Wilson, 378 F.3d at 544. .
On remand, the administrative law judge is further directed to evaluate Germany-Johnson’s claims under the standard appropriate for claims of fibromyalgia. In general, an “impairment must result from anatomical', physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant’s] statement of symptoms.” 20 C.F.R. § 416.908. Fibromyalgia, however, can be confirmed as a severe impairment without objective testing. See Rogers, 486 F.3d at 243 (“On at least one occasion, we have recognized that fibromyalgia can be a severe impairment that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.”). In fact, persons suffering from fibromyalgia “manifest normal muscle strength and neurolog-' ical reactions and have a full range of motion.” Preston v. Sec’y of Health and Human Serv., 854 F.2d 815, 820 (6th Cir. 1988). As a result, we have previously concluded that “[t]here are no objective tests which can conclusively confirm the disease.” Id. at 818. Instead, the standard for diagnosing fibromyalgia in this circuit involves testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. See Rogers, 486 F.3d at 244.
As in Rogers, the ALJ in this case did not discuss, let alone apply, the correct standard for assessing a diagnosis of fibro-myalgia in his decision, instead emphasizing and basing his denial of benefits on “normal” physical findings, i.e., normal muscle strength, normal range of motion, and normal gait. But for obvious reasons, these findings bore little relevance to Dr. Meacham’s diagnosis of fibromyalgia. See Rogers, 486 F.3d at 245 (“in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibro-myalgia, opinions that focus solely upon objective evidence are not particularly relevant”).
Finally, we note the Commissioner’s contention that remanding this case for further consideration would be futile if, as the Commissioner insists, the claimant will fail at a later point in the sequential determination of disability. However, we have held that it is “inappropriate” to speculate concerning the ultimate outcome when an administrative law judge stopped his or her evaluation at a premature step in the sequential analysis, because the remaining steps are for the administrative law judge to consider in the first instance. See Farris, 773 F.2d at 90 (“Since the ALJ stopped at the severity stage in the evaluation process and did not reach the question of whether Mrs. Farris’[s] disorder met or exceeded the severity of a listed impairment, it is inappropriate for us to consider these questions at this juncture' in the case, although they must be determined by the ALJ on remand.”).
III. CONCLUSION
For the reasons set out above, we REVERSE the judgment of the district court and REMAND this case to the administrative law court for further consideration of *779 the claimant’s application for disability . benefits.