# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1076
_____

Deborah Swarthout,

*Plaintiff - Appellant,*

v.

Kilolo Kijakazi, Acting Commissioner of Social Security Administration,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 19, 2021
Filed: May 20, 2022

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Deborah Ann Swarthout appeals a judgment of the district court[1] upholding an agency decision to deny her application for social security disability insurance

---

[1]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota, to whom the case was referred for final disposition by consent of the parties under 28 U.S.C. § 636(c).

benefits.  Swarthout argues that the administrative law judge (ALJ) who denied her claim erred by giving "little weight" to the opinion of one of her treating physicians.  We conclude that the ALJ permissibly weighed the evidence, and we therefore affirm.

In March 2016, Swarthout filed an application for a period of disability and disability insurance benefits with an onset date of August 22, 2015.  An ALJ held a hearing and denied the claim, and the Appeals Council denied review.  Swarthout sought judicial review in the district court, and the court granted judgment for the Commissioner of Social Security.  We review the district court's decision *de novo*, and we will uphold the denial of benefits if, based on the record as a whole, substantial evidence supports the agency's decision.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Swarthout visited several doctors over the course of about four years.  At those appointments, doctors diagnosed her with numerous ailments.  Most relevant here are fibromyalgia and chronic fatigue syndrome.  The administrative record contains almost 200 pages of medical records.

The ALJ evaluated Swarthout's disability claim under the familiar five-step process.  *See* 20 C.F.R. § 404.1520(a).  At step one, the ALJ decided that Swarthout had "not engaged in substantial gainful activity since August 22, 2015."  At step two, the ALJ found that Swarthout has two severe impairments:  fibromyalgia and chronic fatigue syndrome.  The judge also found several non-severe impairments, including Raynaud's phenomenon, history of monoclonal gammopathy, light sensitivity, rosacea, hypertension, depression, and anxiety.  At step three, the ALJ decided that Swarthout does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the relevant regulations, 20 C.F.R. Part 404 Subpart P, Appendix 1.  To evaluate step four, the ALJ first concluded that despite Swarthout's impairments, she had the "residual functional capacity to perform light work."  At step four, the ALJ determined

Swarthout is capable of performing her past relevant work as a "nurse, casual duty." Finally, at step five, the ALJ decided that Swarthout has skills that are "transferable to other occupations with jobs existing in significant numbers." The ALJ thus concluded that Swarthout has not been under a disability, and is ineligible for benefits.

Swarthout challenges only the ALJ's decision to give the opinion of one treating physician, Dr. Maral Kenderian, less than controlling weight. Dr. Kenderian opined that Swarthout could not work a full eight-hour work day. Swarthout contends that Dr. Kenderian's opinion is consistent with Swarthout's own complaints of disabling illness and not inconsistent with other substantial evidence in the record. Swarthout maintains that if the ALJ had given Dr. Kenderian's opinion controlling weight and agreed that Swarthout could not work a full eight-hour day, then it would have followed that she was disabled and eligible for benefits. *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000).

Using a six-page form, on which the physician checked boxes and filled in blanks, Dr. Kenderian said that Swarthout was able to sit for only fifteen minutes at a time and stand for ten minutes at a time. She noted that Swarthout was able to walk only four city blocks "without rest or severe pain." She indicated that Swarthout's legs should be elevated for greater than seventy-five percent of an eight-hour work day, and that she could lift ten pounds only occasionally and never lift twenty or fifty pounds. She opined that Swarthout could sit for less than two hours and stand or walk for less than two hours in an eight-hour work day, and that Swarthout at times would need to use a cane or other assistive device while standing or walking. The doctor also noted that "mental [and] emotional stress exacerbate fibromyalgia."

Swarthout argues that the ALJ misapplied the rule that governed opinions of treating physicians. For an application like Swarthout's that was filed before March 27, 2017, an ALJ is required to give a treating physician's opinion "controlling

weight," provided that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). But an ALJ may assign little weight to a treating physician's opinion if it is "conclusory or inconsistent with the record." *Julin*, 826 F.3d at 1088; *Papish v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).

Dr. Kenderian's opinion was entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form. We held in *Wildman v. Astrue*, 596 F.3d 959 (8th Cir. 2010), that a medical opinion was conclusory, and therefore properly discounted, when it consisted "of three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration." *Id.* at 964. Similarly, an ALJ in *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018), did not err in giving little weight to an assessment that consisted of "nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses." *Id.* at 675. Such forms, we explained, "provide little to no elaboration, and so they possess 'little evidentiary value.'" *Id.* (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). When a treating physician's opinion appears on such a form, an ALJ permissibly may rely more heavily on other opinions in the record. *Id.*

Dr. Kenderian's opinion is also in tension with her own treatment notes. The treatment notes refer only to "evidence of elevated blood pressure levels and occasional skin abnormalities," while observing "otherwise normal heart, lungs, and extremities." The more severe limitations that would prevent Swarthout from working appear for the first time in the check-box form.

Other objective medical evidence in the record contradicts Dr. Kenderian's evaluation of Swarthout's physical limitations. The ALJ noted that the record confirms diagnoses of fibromyalgia and chronic fatigue syndrome, but shows mostly

"normal examination findings, including full strength, normal reflexes, intact coordination, normal joints, normal extremity movements, and a normal, steady gait with consistently independent ambulation." Dr. Kenderian opined that Swarthout at times would need to use a cane or other assistive device while standing or walking, but examination notes and medical records consistently state that Swarthout had a normal gait without an assistive device. Several other reports of examinations include unremarkable findings. As we have said before, that working may cause discomfort does not dictate a finding of disability, and "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

Some of Swarthout's daily activities also undermined Dr. Kenderian's opinion of severe limitations. That Swarthout could shop for thirty minutes in a store conflicted with the physician's opinion that she could stand only for ten consecutive minutes and must avoid light. That Swarthout could dine in restaurants clashed with the doctor's claim that she was unable to sit for more than fifteen minutes. The ALJ reasonably concluded that other daily activities—caring for personal hygiene, managing medications, preparing simple meals, stretching and performing gentle exercises, watching television, reading the newspaper, going for short walks outside, riding a bike, driving, handling money, doing some laundry, and doing some household chores in short increments—provided evidence that Swarthout "is not as limited, either physically or mentally, as she has alleged." While "daily activities alone do not disprove disability, they are a factor to consider in evaluating subjective complaints of pain." *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996); *see also* SSR 14-1p, 79 Fed. Reg. 18750, 18753 (Apr. 3, 2014); SSR 12-2p, 77 Fed. Reg. 43640, 43643 (July 25, 2012).

The ALJ also properly cited Swarthout's conservative treatment plan and resistance to treatment as factors that undermined her claim of severe disabling conditions. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015); *Wagner v. Astrue*,

499 F.3d 842, 851 (8th Cir. 2007). Swarthout declined to attend a prescribed three-week rehabilitation program. She has undertaken only limited occupational therapy and massage therapy, despite recommendations for more expansive treatment. She has declined to pursue recommended appointments with a psychiatrist. This evidence further supports the ALJ's decision that Dr. Kenderian's opinion of severe limitations was not entitled to controlling weight. An ALJ reasonably may conclude that a claimant's failure to pursue treatment for alleged impairments is inconsistent with subjective complaints of disabling conditions. *Milam*, 794 F.3d at 985; *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

For these reasons, we conclude that the agency's decision is supported by substantial evidence. On the record as a whole, the ALJ was justified in declining to give controlling weight to the conclusory opinion of Swarthout's treating physician. The judgment of the district court is affirmed.

KELLY, Circuit Judge, dissenting.

Deborah Swarthout raises one issue on appeal: that the ALJ failed to provide good reasons for discounting the opinion of her treating physician, Dr. Kenderian. See Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (explaining that an ALJ must give "good reasons" for the weight given to a treating physician opinion, irrespective of how much weight is given); Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) ("The regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation."). I agree.

Dr. Kenderian had been Swarthout's primary care physician since 2017 and seen Swarthout four times, but she had also reviewed Swarthout's records from prior care at Mayo Clinic and could access records from various specialists. In this light, Dr. Kenderian's opinion was offered against a backdrop of familiarity with a longitudinal history of Swarthout's conditions. Nevertheless, the ALJ found that Dr.

Kenderian's opinion was contradicted by her own treatment notes.[2]  Though an ALJ may discount an opinion if the treating physician has offered inconsistent opinions, Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001), the treatment notes designated as contradictory here—elevated blood pressure, occasional skin abnormalities, but otherwise normal heart, lungs, and extremities—are largely immaterial to the opinion rendered.  To the extent the ALJ relied on other doctors' examinations that showed "otherwise normal examination findings," such findings do not preclude a finding of debilitating fibromyalgia—at least not without more explanation.  There are "no confirming diagnostic tests" for fibromyalgia, and a diagnosis is largely based on a patient's self-reported symptoms, after eliminating other conditions, rather than objective medical testing.  See, e.g., Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003).  In this context, the ALJ did not adequately explain why the "normal" findings are inconsistent with the type of limitations associated with fibromyalgia.  Cf. Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2d Cir. 2003) ("[T]he absence of swelling joints or other orthopedic and neurologic deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.'" (quoting Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996))); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 778 (6th Cir. 2008) (noting that a claimant's normal gait has little relevance to fibromyalgia).

---

[2]Although the court focuses on the checklist format of Dr. Kenderian's opinion, the ALJ did not discount Dr. Kenderian's opinion because it was conclusory.  Rather, the ALJ concluded the opinion did "not warrant controlling weight, as it is contradicted by [Dr. Kenderian's] own treatment notes."  I thus question whether we can affirm the denial of benefits based on the format of Dr. Kenderian's opinion.  See Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (unpublished) (per curiam) (noting that a "reviewing court may not uphold agency decision based on reasons not articulated by agency itself in its decision" (citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943))).

In giving Dr. Kenderian's opinion little weight, the ALJ also failed to consider the length, frequency, nature, and extent of Dr. Kenderian's treatment relationship with Swarthout, and ignored Dr. Kenderian's area of specialty, all in violation of applicable regulations. See 20 C.F.R. § 404.1527(c) (listing all factors considered if a treating source's medical opinion is not given controlling weight). While an ALJ may give a treating physician's opinion less than controlling weight, there is nothing in this ALJ's decision to indicate that he considered the requisite factors when assessing the weight of Dr. Kenderian's medical opinion. With no other reasons offered for giving Dr. Kenderian's opinion "little" weight, the proper course of action is to remand for further proceedings.

The court also finds support for the ALJ's decision to discount Dr. Kenderian's opinion in other parts of the ALJ's opinion. Even if we were permitted to consider these other findings, see supra note 2, they do not undermine Dr. Kenderian's opinion. The ALJ found that Swarthout's daily activities, "while somewhat restricted, confirm she is not as limited, either physically or mentally, as she has alleged." "[T]his court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." Reed, 399 F.3d at 923 (quotation omitted); see also Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (same). We should be especially cautious here, since "in the context of a fibromyalgia case, . . . the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." Brosnahan, 336 F.3d at 677. Symptoms of fibromyalgia are variable and can cause unpredictable disabling daytime fatigue and pain and interruptions in nighttime sleep, all of which contribute to a claimant's inability to "perform reliably" in the workforce. See id. at 678. The list of daily activities the ALJ found Swarthout engaged in was lengthy, but most required minimal exertion.

Moreover, the ALJ's assessment of Swarthout's ability to engage in daily activities overlooked the evidence that she has both good days and bad days. The ALJ's recitation of her daily activities was based on her description of a good day. The bad days were decidedly different with respect to her stamina, focus, and level of pain. The exercises she does appear to be for pain management and do not involve lifting weights or even standing. And the yoga and meditation are, as the ALJ noted, "nonpharmacologic therapeutic efforts" she has employed to help to manage her symptoms.

Because I would remand for further proceedings, I also note other concerns about the ALJ's RFC analysis. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996). In other words, if a claimant cannot sustain full-time work, she must be found disabled under the Social Security Act. See Bladow v. Apfel, 205 F.3d 356, 359 (8th Cir. 2000). Both severe and non-severe impairments must be considered in an RFC analysis. See Igo v. Colvin, 839 F.3d 724, 731 (8th Cir. 2016) ("The ALJ's RFC assessment must be based on 'all the relevant evidence in [the] case record.'" (quoting 20 C.F.R. § 404.1545(a))).

Before she applied for disability benefits, Swarthout had been restricted to four-hour shifts in her work as a nurse. In other words, she could not work full time because of her physical limitations. And because fibromyalgia symptoms are variable, see Brosnahan, 336 F.3d at 672 n.1, 678, Dr. Kenderian opined that Swarthout would be absent from work more than four days per month, sometimes require unscheduled breaks during an eight-hour workday, and have good days and bad days. Despite this evidence, the ALJ made no finding at all about Swarthout's ability to sustain work eight hours a day, five days a week. It is possible the ALJ had good reasons for concluding Swarthout could work full time despite the evidence to

the contrary. But we do not know what those reasons were and therefore cannot review whether the ALJ's decision was supported by substantial evidence. See, e.g., T-Mobile S., LLC v. City of Roswell, 574 U.S. 293, 301–02 (2015) ("[S]ubstantial-evidence review requires that the grounds upon which the administrative agency acted be clearly disclosed." (cleaned up)).

The ALJ also failed to account for the effects of Swarthout's non-severe impairments in determining her RFC, most notably her sensitivity to light. Light sensitivity is consistently documented in Swarthout's medical records. And Swarthout stopped working full time as a nurse in part because she could not protect her face from light while in a patient's room. The ALJ concluded the condition was nonetheless a non-severe impairment because, "despite [Swarthout's] allegations of reportedly debilitating light sensitivity, the claimant is able to leave the house and attend medical appointments, albeit wearing sun-protective clothing." But Swarthout's ability to engage in short, strategic outings do nothing to suggest she is capable of withstanding eight hours of daily light exposure in an environment that may not allow her to wear light-protective clothing.

Because the ALJ did not provide sufficient reasons for discounting the opinion of Swarthout's treating physician, I would remand for further proceedings.

_____